UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RED BULL GMBH, an Austrian company, and RED BULL NORTH AMERICA, INC., a California corporation,<br><br>        Plaintiffs,<br><br>vs.<br><br>MILTON PETROLEUM, LLC, a New Jersey limited liability company,<br><br>        Defendant. | Civil Action No. 2:19-cv-00715-KM-JBC |

## FINAL JUDGMENT

Plaintiffs, Red Bull GmbH and Red Bull North America, Inc. (collectively, "Red Bull"), and Defendant, Milton Petroleum, LLC ("Milton"), hereby stipulate to entry of final judgment as follows:

1. This Court has subject matter jurisdiction by virtue of the fact that:

   a. This is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et* seq. (the Lanham Act), jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b);

   b. This is a civil action between a citizen of the District of New Jersey on one side and citizens of Austria and California on the other side, in which the value of the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332; and

   c.  Jurisdiction for the claims made under New Jersey state law is conferred in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over Milton because it is a New Jersey limited liability company.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged in the complaint occurred in this district, and under 28 U.S.C. § 1391(c) because Milton is subject to this Court's personal jurisdiction for purposes of this case.

4. Red Bull is engaged in the manufacture, distribution, sale and marketing of various goods and services, including its famous Red Bull Energy Drink and other beverage products (collectively, "Red Bull Products"), throughout the United States and in 171 other countries around the world.

5. Since entering the United States market in 1996, the Red Bull Energy Drink has achieved enormous success through extensive marketing and promotional efforts, including in this district.  Red Bull has been the leading product in its industry for over 20 years.  From 2005 to 2017, Red Bull sold over 16.7 billion units of Red Bull Energy Drink in the United States – over 1.5 billion units in 2017 alone.

6. Since long prior to Milton's acts as detailed in the complaint, Red Bull has made continuous use of the trademarks RED BULL, RED BULL & Double Bull Design,

, RED BULL ENERGY DRINK & Blue/Silver Quadrant Design,

, VITALIZES BODY & MIND, and variations of these marks (collectively, "RED BULL Marks") on and in connection with its Red Bull Products.

7. Red Bull owns, among many others, the following federal trademark registrations issued by the United States Patent and Trademark Office for the RED BULL Marks used on and in connection with the Red Bull Energy Drink and other Red Bull Products:

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS |
|---|---|---|---|
| RED BULL | 3,092,197 | May 16, 2006 | Non-alcoholic beverages, namely energy drinks and hypertonic drinks in Class 32 |
|  | 2,946,045 | May 3, 2005 | Non-alcoholic beverages, namely energy drinks and hypertonic drinks in Class 32 |
|  | 3,197,810 | January 16, 2007 | Soft drinks and sport drinks in Class 32 |
| VITALIZES BODY AND MIND | 3,440,484 | June 3, 2008 | Non-alcoholic beverages, namely, sports drinks, energy drinks and soft drinks in Class 32 |

| | 3,479,607 | August 05, 2008 | Non-alcoholic beverages, namely, sports drinks, energy drinks and soft drinks in Class 32 |
|---|---|---|---|

8.	These registrations are valid, subsisting and incontestable, and constitute conclusive evidence of Red Bull's exclusive right to use the RED BULL Marks for the goods specified in the registrations.  15 U.S.C. §§ 1065, 1115(b).

9.	Red Bull advertises the Red Bull Products featuring the RED BULL Marks in the United States through a wide range of media channels, including television commercials, electronic media (e.g., "Red Bull TV" – a multi-platform digital video service that features programming from the world of Red Bull on an extensive selection of sports, music and lifestyle entertainment events), print media (e.g., Red Bull's "The Red Bulletin" magazine), and other promotional and point of sale materials (e.g., billboards, in-store displays, sampling cars and Red Bull–branded coolers).  In addition, Red Bull promotes the RED BULL Marks in connection with the sponsorship of numerous athletes, ownership of sports teams (including the New York Red Bulls soccer team) and organization of numerous events.  Hundreds of thousands of spectators have witnessed Red Bull's events in the United States, further strengthening Red Bull's brand recognition and building up the goodwill in the RED BULL Marks.  In addition, Red Bull has over 49 million fans/"likes" on Facebook, over 2.1 million followers on Twitter, 8.3 million followers on Instagram and over 6.1 million subscribers on its YouTube channel.

-5-

From 2005 to 2017, Red Bull spent billions of dollars on advertising and promoting the Red Bull Products and the RED BULL Marks in the United States.

10. As a result of Red Bull's extensive sales, promotion, and advertising of the Red Bull Products, the RED BULL Marks have become famous among the general consuming public of the United States, and represent an extraordinarily valuable goodwill to Red Bull. In fact, the RED BULL Marks are consistently ranked in the top 100 most valuable brands worldwide.

11. In addition to its activities in the United States, Red Bull and its related entities are engaged in the manufacture, distribution, sale and marketing of energy drinks bearing the RED BULL Marks that are only authorized for sale in specific foreign countries or regions ("Gray Market Red Bull Energy Drink").

12. Gray Market Red Bull Energy Drink is tailored to specific geographic regions or countries to reflect differences in terms of language, government regulations, and units of measurement, among other things.

13. Red Bull and its related entities appoint distributors or agents in the various geographic regions or countries to maintain the quality associated with products bearing the RED BULL Marks within each particular region or country.

14. Gray Market Red Bull Energy Drink is not authorized or intended for exportation out of its intended region or country, or for importation into, sale, marketing or distribution in the United States.

15. Indeed, the International Trade Commission has issued a General Exclusion Order that bars the importation into the United States of all Gray Market Red Bull Energy Drink, irrespective of the identity of the importer. *See In the Matter of Certain Energy Drink Products*, Inv. No. 337-TA-678 (CIT Oct. 1, 2010).

16. Additionally, Red Bull has successfully taken action against the importation and sale of Gray Market Red Bull Energy Drink in the past. *See, e.g., Red Bull GmbH, et al. v. The Trading Group Inc.*, 18-cv-03764-LGS (S.D.N.Y. Oct. 4, 2018) (awarding permanent injunction and $120,694.08 in damages); *Red Bull GmbH et al. v. Capitol Cash and Carry*, 1:18-cv-01003-PLF (D.D.C. June 28, 2018); *Red Bull GmbH et. al. v. Kassir Co. et. al.*, 1:06-cv-2301-CC (N.D. Ga. Feb. 11, 2009) (entering permanent injunction and $2.1 million damages award).

17. Without Red Bull's consent, Milton sold Gray Market Red Bull Energy Drink that was intended for sale in South Africa and not authorized for sale in the United States.

18. Milton represents that its sales of Gray Market Red Bull Energy Drink were done without its knowledge that the goods were not authorized for sale in the United States.

19. The Gray Market Red Bull Energy Drink intended for sale in South Africa, which Milton sold within the United States, is materially different in many respects from the product authorized for sale in the United States. For example, the South African Red Bull Energy Drink:

   a. Does not travel through authorized supply chains and is therefore not subject to Red Bull's quality control standards such as transporting the Red Bull Products in climate controlled containers or in a manner that ensures the cans do not get dents and nicks which may result in a can that looks to be an inferior product and may also result in leakage or a loss of carbonation;

   b. Does not contain the adequate UPC Code to track the product in case of a recall;

   c. Presents nutrition information in a manner that does not comply with FDA requirements;

      d.      Is missing beverage container deposit information required by several U.S. states;

      e.      Includes variation on English spelling that is different from American English, such as "colour" versus "color", which American consumers are unfamiliar with;

      f.      Presents the expiration date in a manner U.S. consumers are not familiar with, i.e., DD-MM-YYYY, and which may not allow the consumer to determine the correct expiration date of the product;

      g.      Presents volume and nutrition information using the metric system instead of the standard system of measurement that U.S. consumers recognize; and

      h.      Directs consumers to Red Bull's South African website instead of its American website and is missing the United States toll-free number for consumers to contact Red Bull in case of questions or concerns.

20.      Milton's sale of Gray Market Red Bull Energy Drink constitutes:

      a.      trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

      b.      unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

      c.      dilution in violation of Section 43(c) of the Lanham Act, § 1125(c);

      d.      unfair competition in violation of New Jersey Stat. § 56:4-1;

      e.      dilution in violation of New Jersey Stat. § 56:3-13.20; and

      f.      unfair competition in violation of New Jersey common law.

21. Milton, its successors, assigns, affiliates, subsidiaries, officers, employees, agents, representatives, and all others in active concert or participation with them, are permanently enjoined and restrained from the importation into, and the dealing, marketing, sale or distribution in the United States, of Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in South Africa.

22. Milton, and all others holding by, through or under Milton, are hereby required, jointly and severally, to:

    a. account for and pay over to Red Bull all profits derived from Milton's acts of trademark infringement and unfair competition in accordance with 15 U.S.C. § 1117(a) and New Jersey common law;

    b. pay to Red Bull the costs of this action, together with reasonable attorneys' fees and disbursements, in accordance with 15 U.S.C. § 1117(a);

    c. destroy any remaining Gray Market Red Bull Energy Drink in their possession, including packaging, and any advertising, marketing, or promotional materials that include Gray Market Red Bull Energy Drink; and

    d. post a notice on Milton's premises in a place that is readily visible to consumers stating that the importation, dealing in, sale, marketing or distribution of Gray Market Red Bull Energy Drink in the United States is unlawful and that Milton has been enjoined by a United States District Court from doing so.

SO ORDERED AND ADJUDGED:

Dated: _____

                                      Kevin McNulty

                                      United States District Judge

CONSENTED AND AGREED TO:

| On behalf of Red Bull GmbH and Red Bull North America, Inc. | On behalf of Milton Petroleum, LLC |
|---|---|
| By: _____ | By: _____ |
| MURPHY ORLANDO LLC<br>    John W. Bartlett (NJ No. 023042001)<br>    30 Montgomery St., 11th Floor<br>    Jersey City, NJ 07302<br>    (201) 451-5000<br>    jbartlett@murphyorlando.com | MICHAEL J. BROWN LAW OFFICE<br>    Michael J. Brown<br>    354 Eisenhower Parkway<br>    Plaza I, 2nd Floor, Suite 2025<br>    Livingston, NJ  07039<br>    michael@mjbrownlaw.com |
| PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP<br>    Phillip Barengolts (IL No. 6274516)<br>    Jessica A. Ekhoff (IL No. 6308953)<br>    200 S. Wacker Dr., Ste. 2900<br>    Chicago, IL 60606<br>    (312) 554-8000<br>    pb@pattishall.com<br>    jae@pattishall.com | Dated: May 13, 2019 |
| Dated: May 9, 2019 | |